ACCEPTED
07-14-00113-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
1/25/2015 5:13:57 AM
Vivian Long, Clerk

NO. 07-14-00113-CR

IN THE
COURT OF APPEALS
SEVENTH JUDICIAL DISTRICT
AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
1/25/2015 5:13:57 AM
VIVIAN LONG
CLERK

_____

COBY MINTON
V.
THE STATE OF TEXAS

_____

ON APPEAL FROM THE 137TH DISTRICT COURT
OF LUBBOCK COUNTY, TEXAS
CAUSE NO. 2013-437,996

_____

BRIEF FOR THE STATE

_____

MATTHEW D. POWELL
Criminal District Attorney
Lubbock County, Texas

MANDI SAY
ROBERT WITHERS
Assistant Criminal District Attorneys
(Trial Attorneys)

ORAL ARGUMENT REQUESTED
(Only if Granted to Appellant)

JEFFREY S. FORD
Assistant Criminal District Attorney
Lubbock County, Texas
State Bar No. 24047280
P.O. Box 10536, Lubbock, TX 79408
Phone (806)775-1166
FAX: (806)775-7930
E-mail: JFord@co.lubbock.tx.us
(On Appeal)
**ATTORNEY FOR THE STATE**

Identity of Parties and Counsel

**Appellant:**

Coby Minton

**Appellant's trial attorney**:

Phillip Wainscott, P.O. Box 226162, Dallas, Texas 75222; phone (214)749-5701; fax (888)552-1627

**Appellant's appellate counsel:**

Joel Cook, Law Offices of Wm. Everett Seymore, 810 Main Street, Lubbock, TX 79401; phone (806)747-3825; fax (806)747-3851

**State of Texas:**

At trial:

Amanda Say and Robert Withers, Assistant Criminal District Attorneys, Lubbock County Criminal District Attorney's Office, P.O. Box 10536, Lubbock, Texas 79408; phone (806)775-1100; fax (806)775-7930

On appeal:

Jeffrey S. Ford, Assistant Criminal District Attorney, Lubbock County Criminal District Attorney's Office, P.O. Box 10536, Lubbock, Texas 79408; phone (806)775-1166; fax (806)775-7930

**Trial Judge:**

Honorable John "Trey" J. McClendon, III, Presiding Judge, 137th District Court of Lubbock County, Texas, Lubbock County Courthouse, 904 Broadway, Suite 300, Lubbock, TX 79401

<u>Table of Contents</u>

**PAGE**

Identity of Parties and Counsel ...................................................................................i

Table of Contents ...................................................................................... ii

Table of Authorities ...................................................................................vi

Statement of the Case....................................................................................xi

Statement of the Facts ..................................................................................1

    *Law enforcement investigation into heroin operation* .....................................1

    *Norman West & Cynthia Ramirez's testimony*...............................................7

Summary of the Argument..............................................................................10

Argument and Authorities………………………………………………………...14

<u>First Issue Presented</u>: Appellant argues that the non-accomplice evidence in the case is insufficient to tend to connect him to the commission of the offense of possession of heroin with the intent to deliver in Lubbock County. His challenge to the venue is not a proper accomplice corroboration challenge since that requirement only applies to a criminative fact—which venue is not. Even if the accomplice corroboration requirement does apply to venue, his claim that the non-accomplice testimony is insufficient to tend to connect him either to the offense of possession of heroin with the intent to deliver or the specific intent to deliver in Lubbock County lacks merit. Appellant was seen by law enforcement meeting

with Norman West, who was later arrested with heroin supplied to him by Appellant in his possession. Appellant's bank records and phone records show multiple deposits and meetings between Appellant and West in the time span of a month, and that Appellant communicated with most or all of West's Lubbock heroin distribution ring. West's text messages showed that Appellant received money from West and that Appellant set up a bank account where West could "front" money to him. Does the accomplice corroboration requirement apply to a venue challenge? Does the non-accomplice testimony tend to connect Appellant to the offense of possession of heroin with intent to deliver in Lubbock County?

the offense of possession of heroin with intent to deliver in Lubbock County?.....14

*Standard of Review*…………………………………………………………15

*Discussion*………………………………………………………………….17

*Does the accomplice corroboration requirement apply to whether the county where the offense was prosecuted is proper, i.e., the venue of where the trial was held?*....................................................................18

*Did the non-accomplice evidence tend to connect Appellant with the commission of the offense in Lubbock County?*.......................................19

*Conclusion*………………………………………………………………….29

<u>Second Issue Presented</u>: Appellant argues that the evidence is legally insufficient to prove that the offense occurred in Lubbock County and that Appellant was a party to Norman West's commission of the offense of possession of heroin with intent to deliver in Lubbock County. Appellant's sufficiency challenge to the

venue lacks merit because his party predicate acts in Archer County could properly form the basis of criminal prosecution in the county where the offense itself occurred, *i.e.*, Lubbock County. Likewise, Appellant's sufficiency challenge to the evidence supporting his liability as a party lacks merit because the evidence shows that Appellant acted with intent to promote or assist in West's commission of the offense of possession of heroin with the intent to deliver in Lubbock County by aiding or attempting to aid him to commit the offense knowing that the heroin would be delivered to West's Lubbock heroin distribution network and to heroin addicts. Did the State prove by a preponderance of the evidence that the offense was committed in Lubbock County by proving the party-predicate evidence from Archer County? If not, were Appellant's substantial rights affected by the venue error? Did the State prove beyond a reasonable doubt that Appellant was a party to Norman West's possession of heroin with intent to deliver in Lubbock County?..33

*Discussion*……………………………………………………………….34

*Do the facts of the case show that the offense was committed in Lubbock County for venue purposes?*..................................................................34

*Were Appellant's substantial rights affected from the venue "error"?*...41

*Did the State prove that Appellant aided or attempted to aid West in possessing heroin with intent to deliver in Lubbock County?*..................48

*Conclusion*………..…………………………………………………...57

Conclusion and Prayer ...........................................................................58

Certificate of Service ...........................................................................58

Certificate of Compliance……………………………………………………59

**SUPREME COURT CASE LAW**                                    **PAGE**

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)……….35

**TEXAS CASE LAW**

*Baker v. State*, 124 Tex. Crim. 300, 62 S.W.2d 132 (1933) (*op. on reh'g*)………40

*Beathard v. State*, 767 S.W.2d 423 (Tex. Crim. App. 1989)………………………...27

*Beier v. State*, 687 S.W.2d 2 (Tex. Crim. App. 1985)……………………………….48

*Bigby v. State*, 892 S.W.2d 864 (Tex. Crim. App. 1994)…………………………….28

*Black v. State*, 645 S.W.2d 789 (Tex. Crim. App. 1983), *overruled in part on other grounds by Schmutz v. State*, 440 S.W.3d 29 (Tex. Crim. App. 2014)…………...36

*Blackman v. State*, 350 S.W.3d 588 (Tex. Crim. App. 2011)……………………….24

*Braddy v. State*, 908 S.W.2d 465 (Tex. App.—Dallas 1995, no pet.)…………….36

*Burdine v. State*, 719 S.W.2d 309 (Tex. Crim. App. 1986), *overruled in part on other grounds by Barnes v. State*, 876 S.W.2d 316 (Tex. Crim. App. 1994)……..49

*Burkhalter v. State*, 655 S.W.2d 215 (Tex. App.—Corpus Christi 1982), *pet. dism'd as improvidently granted*, 655 S.W.2d 208 (Tex. Crim. App. 1983)……..40

*Carlisle v. State*, 31 Tex. Crim. 537, 21 S.W. 358 (1893)………………………..40

*Castillo v. State*, 221 S.W.3d 689 (Tex. Crim. App. 2007)……………………...15, 20

*Cathey v. State*, 992 S.W.2d 460 (Tex. Crim. App. 1999)………………………..16

*Dewalt v. State*, 307 S.W.3d 437 (Tex. App.—Austin 2010, pet. ref'd)……...42, 47

*Duvall v. State*, 189 S.W.3d 828 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd)..........................................................................................38-40, 51

*Gallardo v. State*, 281 S.W.3d 462 (Tex. App.—San Antonio 2007, no pet.)……26

*Gross v. State*, 380 S.W.3d 181 (Tex. Crim. App. 2012)…………………………49

*Guevara v. State*, 152 S.W.3d 45 (Tex. Crim. App. 2004)……………………...49, 56

*Hernandez v. State*, 939 S.W.2d 173 (Tex. Crim. App. 1997)………...23-24, 28, 31

*Hernandez v. State*, 327 S.W.3d 200 (Tex. App.—San Antonio 2010, pet. ref'd).32

*Herrod v. State,* No. 03-09-00076-CR, 2010 WL 3431667, 2010 Tex. App. LEXIS 7243 (Tex. App.—Austin Aug. 31, 2010, no pet.) (*not designated for publication*)………………………………………………………………..30

*Holladay v. State*, 709 S.W.2d 194 (Tex. Crim. App. 1986)……………………...18

*Joubert v. State*, 235 S.W.3d 729 (Tex. Crim. App. 2007)………………………20

*Lewis v. State*, No. 05-94-01051-CR, 1996 WL 640590, 1996 Tex. App. LEXIS 4894 (Tex. App.—Dallas Oct. 31, 1996, no pet.) (*not designated for publication*)………………………………………………………………..56

*Little v. State*, No. 12-05-00340-CR, 2006 WL 2106967, 2006 Tex. App. LEXIS 6739 (Tex. App.—Tyler July 31, 2006, pet. ref'd) (*not designated for publication*)………………………………………………………………..18

*Ludy v. State*, No. 07-04-0240-CR, 2005 WL 21447, 2005 Tex. App. LEXIS 63 (Tex. App.—Amarillo Jan. 4, 2005, no pet.) (*not designated for publication*)…...36

*Malone v. State*, 253 S.W.3d 253 (Tex. Crim. App. 2008)………………………16

*Marshall v. State*, No. 07-08-0499-CR, 2009 WL 4573476, 2009 Tex. App. LEXIS 9305 (Tex. App.—Amarillo Dec. 7, 2009, no pet.) (*not designated for publication*)..........................................................................................30

*McAfee v. State*, 204 S.W.3d 868 (Tex. App.—Corpus Christi 2006, pet. ref'd)...32

*McDuff v. State*, 939 S.W.2d 607 (Tex. Crim. App.), *cert. denied*, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997)………………………………………….20

*McKinney v. State*, 177 S.W.3d 186 (Tex. App.—Houston [1st Dist.] 2005), *aff'd*, 207 S.W.3d 366 (Tex. Crim. App. 2006)…………………………………..49, 52

*Mitchell v. State*, 650 S.W.2d 801 (Tex. Crim. App. 1983)………………………25

*Murphy v. State*, 112 S.W.3d 592 (Tex. Crim. App. 2003)…………………..........36

*Rippee v. State*, 384 S.W.2d 717 (Tex. Crim. App. 1964)………………………..36

*Roys v. State*, 416 S.W.3d 229 (Tex. App.—Amarillo 2013, pet. ref'd)………….20

*Schmutz v. State*, 440 S.W.3d 29 (Tex. Crim. App. 2014)..18, 35, 41, 42, 45, 46, 49

*Smith v. State*, 332 S.W.3d 425 (Tex. Crim. App. 2011)………………….....15-17

*Wachholtz v. State*, 296 S.W.3d 855 (Tex. App.—Amarillo 2009, pet. ref'd)……28

**TEXAS RULES AND STATUTES**

TEX. CODE CRIM. PROC. ANN. art. 13.09………………………………………….46

TEX. CODE CRIM. PROC. ANN. art. 13.17………………………………………….36

TEX. CODE CRIM. PROC. ANN. art. 13.18……………………………………...37, 40

TEX. CODE CRIM. PROC. ANN. art. 13.21………………………………………….46

TEX. CODE CRIM. PROC. ANN. 38.14……………………………………..15, 16, 19, 33

TEX. HEALTH & SAFETY CODE ANN. § 481.002(8)…………………………………..51

TEX. HEALTH & SAFETY CODE ANN. § 481.112………………………………………..50

TEX. HEALTH & SAFETY CODE ANN. § 481.112(a)………………………………..50

TEX. HEALTH & SAFETY CODE ANN. § 481.112(d)………………………………..50

TEX. PEN. CODE ANN. § 7.01(a)………………………………………………….38, 48

TEX. PEN. CODE ANN. § 7.01(b)………………………………………………...38

TEX. PEN. CODE ANN. § 7.02(a)(2)…………………………………………..38, 48, 54

TEX. PEN. CODE ANN. § 71.02(a)(5)…………………………………………………46

TEX. R. APP. P. 3.2……………………………………………………………….....x

TEX. R. APP. P. 44.2(b)………………………………………………………..41, 42

TEX. R. APP. P. 44.2(c)(1)………………………………………………………36

NO. 07-14-00113-CR

IN THE
COURT OF APPEALS
SEVENTH JUDICIAL DISTRICT
AMARILLO, TEXAS

———————————————————

COBY MINTON
V.
THE STATE OF TEXAS

———————————————————

BRIEF FOR THE STATE

———————————————————

**To the Honorable Court of Appeals**:

The State of Texas, the prosecuting authority in Cause No. 2013-437,996 in the 137th District Court of Lubbock County, and Appellee before the Seventh Court of Appeals, respectfully submits this brief in reply to the brief filed by Appellant appealing his conviction for the offense of Possession of a Controlled Substance Penalty Group 1 with Intent to Deliver 4-200 Grams. The parties will be referred to as "Appellant" and "State."[1]

---

[1] TEX. R. APP. P. 3.2.

## Statement of the Case

Appellant was charged by a three-count indictment in Cause No. 2013-437,996 with two counts of organized crime (Counts 1 and 2) and one count of possession with intent to deliver a controlled substance listed in Penalty Group 1 (heroin) in an amount of four grams or more but less than 200 grams (Count 3) on April 3, 2013. (Clerk's Record (CR) p. 7). The State proceeded on Count 3 of the indictment. Following a two-day jury trial, from February 24-25, 2014, Appellant was found guilty of the offense of possession of a controlled substance Penalty Group 1 (heroin) with intent to deliver in an amount of between four and 200 grams. (CR p. 104) (Reporter's Record (RR) vol. 4, p. 244). The trial court assessed Appellant's punishment at twenty (20) years imprisonment on February 26, 2014. (RR vol. 5, pp. 15-16). The trial court certified that Appellant has the right of appeal. (CR p. 89) (RR vol. 5, p. 17).

Statement of Facts

*Law enforcement investigation into heroin operation:*

Lieutenant Steven Schwartz with the Texas Department of Public Safety (DPS) Criminal Investigations Division received information that led him to believe that Norman West, a distributor of heroin in Lubbock, was going to be making a trip on December 6, 2010, to meet his heroin supplier and obtain black tar heroin to bring back to Lubbock. Schwartz was the case agent for the investigation into West's heroin organization and coordinated surveillance and traffic stops. (RR vol. 4, pp. 123-27).

Agent Mark Ball, an investigator with the DPS Criminal Investigation Division in 2010, was contacted about a possible drug deal between West and his supplier occurring somewhere in Seymour, Texas, on December 6th. (RR vol. 4, pp. 16-18). Ball was asked to establish surveillance on West's vehicle as it arrived in Seymour. (RR vol. 4, p. 18). Unbeknownst to West, he was under investigation for heroin trafficking and under surveillance by Lubbock investigators. As part of this surveillance, a court-ordered tracking device was placed on West's vehicle. (RR vol. 4, pp. 18, 23, 96).

Agent Ball followed West's Suzuki SUV from Seymour to Archer County, Texas. (RR vol. 4, pp. 17-18). Ball observed West park at a roadside park alongside Highway 82. (RR vol. 4, p. 25). Shortly after West arrived, a gray

Acura pulled in and parked directly behind West's Suzuki. Agent Ball observed both drivers talking while standing alongside the vehicles. (RR vol. 4, p. 19). In order to establish surveillance on West's meeting at the roadside park (which took place approximately twenty to twenty-five yards from Highway 82), Agents Ball and Mike Smith repeatedly drove approximately a mile to the west, turned around, and then drove a mile to the east, and back again. (RR vol. 4, pp. 18-20, 26).

After about twelve minutes, both vehicles left the rest area driving in opposite directions. (RR vol. 4, p. 20). Ball followed the Acura into Wichita Falls and advised Trooper Mark Coonce with the Texas Highway Patrol that he would like the vehicle stopped in order to identify the driver. (RR vol. 4, pp. 20, 22, 27-28). Trooper Coonce established probable cause to pull the Acura over and obtained the identity of the driver as Coby Minton (*i.e.*, Appellant). (RR vol. 4, pp. 35-37). After the traffic stop was complete, Trooper Coonce issued a warning and let Appellant go. (RR vol. 4, p. 40).

Around 2:00 p.m. that same day, Trooper Brent Collins with the Texas Highway Patrol was contacted by the DPS Criminal Investigation Division and asked to perform a traffic stop on West's vehicle. (RR vol. 4, pp. 50-51). When Trooper Collins established probable cause to pull West over for a traffic violation, he initiated a traffic stop. (RR vol. 4, p. 51). West appeared abnormally nervous during the traffic stop. (RR vol. 4, pp. 52-53). West gave Trooper Collins

permission to search the vehicle. Deputy Stevens, who had pulled up immediately after Collins stopped Appellant, ran his dog around the vehicle. The dog alerted on the vehicle. (RR vol. 4, pp. 54-55).

As the dog was conducting an open air sniff around the vehicle, West started to act like he was going to have a heart attack, so Trooper Collins called an ambulance for West. (RR vol. 4, p. 55). After the dog alerted on the vehicle, the vehicle was searched by Lieutenant Schwartz (who arrived on the scene after West had been detained) and another officer. A cylindrical object wrapped in aluminum foil, which was determined to be heroin (with a net weight of 58.69 grams), was found in the center armrest. (RR vol. 4, pp. 56, 129, 133, 180). West told Collins that he had driven to the Fort Worth area to buy $4,000 worth of heroin for his sons. (RR vol. 4, pp. 56-57). After talking to West, he was released to EMS's care. (RR vol. 4, p. 57).

West was taken to the hospital due to his complaints of chest pain. Lieutenant Schwartz interviewed West at the hospital, then conducted another interview at the Lubbock DPS Office after West was released from the hospital. (RR vol. 4, pp. 133-34). West provided Schwartz with information regarding his heroin trafficking operation in Lubbock County and gave Schwartz his cell phone. Photographs were taken of text messages on Appellant's phone and a download of the cell phone was done. (RR vol. 4, p. 134).

Photographs of numerous text messages between West and "Cowboy," *i.e.*, Appellant, were admitted into evidence. (RR vol. 4, pp. 82-83, 135-36; vol. 6, State's Exhibits 2-3, 15-92). On November 5-6, 2010, there were text messages sent by West to Appellant about meeting up on the 6th (after a $3,000 deposit was made by West at the First Convenience Bank on November 4, 2010, and a $2,800 withdrawal was done by Appellant the same day).[2] On November 15-16, 2010, messages were sent about another meeting on the 16th (after a deposit had been made at First Convenience Bank on November 10th for $3,400 dollars and a $3,000 withdrawal was made by Appellant on November 12th).[3] Another meeting took place on November 24, 2010 (after a deposit was made by West into Appellant's account for $3,400 on November 23rd and a withdrawal was made for $3,200 on November 24th).[4] On November 26, 2010, Appellant sent a text message containing a banking account number and a message stating, "Let me know you got this."[5] On December 3, 2010, Appellant sent a message to West

---

[2] (RR vol. 4, pp. 146-48; vol. 6, State's Exhibits 16 ("See you then. I will call you about 10 a.m."); 18 ("I'm taking nap, call when you're ready."); 19 ("Okay. Just call when you're ready."); 20 ("Are you about here?"); 21 ("Call me ASAP so I know what's up.")).

[3] (RR vol. 4, pp. 148-49; vol. 6, State's Exhibits 28 ("Call me asap."); 29 ("Call me."); 30 ("It's done call me asap."); 32 ("Is everything a go? Let me know."); 33 ("Cowboy, waiting to hear from you."); 34-35 ("Call me, don't care how late it is so I'll know to leave or not."); 36 ("I am on my way, be there at 12:00 noon."); 38 ("Call me."); 39 ("Made home safe, call me tomorrow.")).

[4] (RR vol. 4, pp. 149-50; vol. 6, State's Exhibits 43-44 ("I am on my way."); 45-46 ("Call me asap."); 47 ("You're home already, right?"—sent from Appellant to West); and 48 ("You alright?"—sent from Appellant to West).

[5] (RR vol. 4, pp. 149-50; vol. 6, State's Exhibit 49).

stating, "If you could do 1 g, I can use some to flip when we meet up. But that will get me by for I need to pay car payment. That's five. Anything will help man. We …"[6] The last text messages prior to a meeting were sent to Appellant the day of the December 6th meeting (after a deposit of $3,400 and a deposit of $500 were made on December 6, 2010, and a $2,900 withdrawal was done the same day).[7] After West was arrested, Appellant sent a message saying "You never called."[8]

During the investigation, Lieutenant Schwartz was able to obtain phone records for one of Appellant's phones. He found phone calls from Appellant's phone to individuals associated with West and his heroin operation. (RR vol. 4, pp. 166-68). The phone records showed that phone calls were both sent and received to the following people associated with West's heroin distribution ring (all of whom had an 806 prefix and lived in Lubbock): Norman West; Cynthia Ramirez, Anthony Fields, Bryce Embry, and Patrick Helms. (RR vol. 4, pp. 168-69).

In addition, Schwartz obtained Appellant's financial records from his First Convenience Bank account—after West explained that he and other people working with him deposited (or "fronted") money into the First Convenience Bank account in Lubbock (in addition to a Chase Bank account in Levelland) to purchase

---

[6] (RR vol. 4, p. 151; vol. 6, State's Exhibits 74-75).
[7] (RR vol. 6, State's Exhibits 83 ("Is everything ok let me know."); 84 ("Are you close?"); 85-86 ("I will be in a dead zone for about a hour I will call you as soon as I can.").
[8] (RR vol. 4, p. 152; vol. 6, State's Exhibit 88).

5

heroin from Appellant. (RR vol. 4, pp. 138-39, 154-55; vol. 6, State's Exhibit 13). The bank account was opened by Appellant on October 1, 2010, and had his picture and address listed on the account. (RR vol. 4, pp. 140-41; vol. 6, State's Exhibit 13). The records show multiple deposits and withdrawals that were made within a short period of time. In October, the following deposits and withdrawals were done either the same day or the next day: (1) $1,500 deposit made on October 6th and a $1,450 withdrawal was done the next day; (2) $1,700 deposit made on October 12th and a $1,700 withdrawal made the same day; (3) $1,700 deposit made on October 15th and a $1,450 and $200 withdrawal done the same day; (4) $1,700 deposit made on October 18th and a $1,700 withdrawal done the same day; and (5) $3,100 deposit made on October 27th and a $2,950 withdrawal done the next day. (RR vol. 6, State's Exhibit 13, pp. 40, 50). In November, the following deposits and withdrawals were done either the same day or within a few days of one another: (1) $3,000 deposit made on November 4th and a $2,800 withdrawal done the next day; (2) $3,400 deposit made on November 10th and a $3,000 withdrawal done on November 12th; and (3) $3,400 deposit made on November 23rd and a $3,200 withdrawal done the next day. (RR vol. 6, State's Exhibit 13, pp. 50, 62). In December, the following deposits and withdrawal were done the same day: $3,400 and $500 deposits made on December 6th and a $2,900 withdrawal done the same day. (RR vol. 4, p. 142; vol. 6, State's Exhibit 13, p.

6

63). In addition, another $500 deposit was made on December 10, 2010—a deposit which was done by Schwartz in hopes of setting up another transaction between West and Appellant so DPS could catch Appellant with the heroin in his possession. (RR vol. 4, pp. 142-43).

Schwartz was able to identify all of the individuals in the West heroin organization—which included Appellant, as the source of the heroin. (RR vol. 4, p. 158). The total amount of money that was transferred from different banks in the Lubbock area to Appellant between September 18th and December 6th was $42,100 dollars. (RR vol. 4, p. 172). The amount was significant since Appellant was unemployed during this time. (RR vol. 4, pp. 158-59).

*Norman West & Cynthia Ramirez's testimony:*

Norman West was given testimonial immunity to testify at trial. (RR vol. 4, pp. 71-72, 91). He was given a life sentence for possession of the heroin (with the intent to deliver) given to him by Appellant. (RR vol. 4, p. 75).

In September of 2010, West was introduced to Appellant by Anthony Fields and Bryce Embry. (RR vol. 4, pp. 83-84, 113-14, 117). The introduction was for the purpose of purchasing heroin from Appellant. (RR vol. 4, p. 84). The initial meeting between Appellant and West took place at West's house on 73rd Street (between Utica Avenue and Slide Road) in Lubbock. (RR vol. 4, pp. 114, 118-19). The purpose of the visit concerned West wanting to purchase heroin from

Appellant. Appellant agreed to be a source of heroin for West. (RR vol. 4, pp. 114-15). Since Appellant lived in Lewisville while West lived in Lubbock, West would "front" the money for the heroin using either Western Union, First Convenience Bank, or Chase Bank. (RR vol. 4, pp. 85, 97-98, 115-16). The account at First Convenience Bank was set up by Appellant in his own name for the purpose of receiving money from West for heroin. The First Convenience Bank where West made deposits is located inside of a Lubbock Wal-Mart. (RR vol. 4, pp. 98, 116). The Chase Bank where West made deposits is located in Levelland. (RR vol. 4, pp. 98-99, 116). Appellant provided the account numbers to West for both accounts. (RR vol. 4, pp. 116-17).

On December 6, 2010, West and Appellant agreed to meet at a rest area near Wichita Falls. (RR vol. 4, pp. 77-78, 85, 92). At the rest area, Appellant gave West approximately sixty-two grams of heroin. The handoff of the heroin occurred outside of West's and Appellant's vehicles. (RR vol. 4, pp. 78-79). The handoff occurred after West had deposited $3,400 in the account set up by Appellant in advance of the meeting—with an additional $500 to be deposited after West returned to Lubbock. (RR vol. 4, pp. 79-80). After receiving the heroin, West was driving back to Lubbock when he was pulled over and arrested. West cooperated with law enforcement after he was taken in. (RR vol. 4, p. 80). One of the things he agreed to do—after he was arrested—was to call Appellant and let

him know that everything was okay and that he would deposit $500 in the account. (RR vol. 4, pp. 85-86, 152-53).

Cynthia Ramirez, another person involved in the heroin operation, was also given testimonial immunity due to her pending indictments for her role in the heroin dealing operation. (RR vol. 4, p. 189). She met Appellant at West's house in September of 2010. (RR vol. 4, pp. 190, 201-02). In order to supply her heroin addiction, Ramirez, at West's request, would drive to pick up heroin from Appellant, make deposits into Appellant's account, and would sometimes deal heroin. (RR vol. 4, pp. 192, 202).

On September 28, 2010, Ramirez met Appellant at a small store outside of Abilene, where she exchanged money for heroin. Ramirez was accompanied by Chris Gonzalez, a longtime friend of West's who was also involved in most of their heroin dealings. (RR vol. 4, pp. 193-95). As Ramirez and Gonzalez drove to meet Appellant (in West's white Suzuki SUV), Ramirez and Appellant texted back and forth to let one another know where they were.[9] Once Ramirez arrived at the convenience store, Ramirez handed Appellant the money and he handed her a baggie containing heroin. (RR vol. 4, p. 197). Ramirez took the heroin to the bathroom inside the store, put the bagged heroin into a condom, and placed it

---

[9] (RR vol. 4, pp. 195-96, 208; vol. 6, State's Exhibits 95 ("Now I'm on 222 West"); 96 ("How far are you from Knox City?"); 97 ("I'm in Munday on Business 277.")).

inside her vagina. (RR vol. 4, pp. 197-200). Ramirez then left the store and started driving back to Lubbock. On the way back to Lubbock, Ramirez was stopped by law enforcement and presented with a search warrant. Instead of the officers having to take the heroin off her person, Ramirez opted to voluntarily give them the heroin (which had a net weight of 70.75 grams). (RR vol. 4, pp. 200-01, 213-14; vol. 5, pp. 4-5).

## Summary of the Argument

Appellant argues in his first issue that the non-accomplice evidence is insufficient to "tend to connect" him to the commission of the offense of possession of heroin with the intent to deliver in Lubbock County. But, his accomplice corroboration challenge to the "specific intent to distribute in a specific geographical area" is not a proper corroboration challenge since a "specific geographical area" is not an element of the offense. The corroboration requirement only applies to a "criminative fact"—which venue is not. Since venue is not an element of the offense, there is no requirement that the venue of the trial be supported by non-accomplice evidence that tended to connect him to the commission of the offense.

Assuming, however, that the accomplice corroboration requirement does apply to venue, there was sufficient non-accomplice corroborating evidence that tended to connect him to the commission of the offense. Appellant was seen by law enforcement meeting with Norman West on December 6, 2010, in Archer County. West was later arrested the same day in Lubbock County with heroin in his possession. Appellant's bank records and phone records show multiple deposits and meetings between Appellant and West in the time span of a month, and that Appellant communicated with most or all of West's Lubbock heroin distribution ring. West's text messages showed that Appellant received money from West from a bank account that was set up by Appellant in Lubbock. The non-accomplice corroborating evidence was sufficient to tend to connect Appellant to the offense of possession of a controlled substance with intent to deliver in Lubbock County.

Appellant argues in his second issue that the evidence is legally insufficient to prove that the offense occurred in Lubbock County for venue purposes or that Appellant was a party to Norman West's commission of the offense of possession of heroin with the intent to deliver in Lubbock County. Neither claim has merit.

Appellant argues that the evidence that the offense was committed in Lubbock County for venue purposes is "legally insufficient" because there was no evidence that he was in Lubbock at the time of the offense. His "sufficiency"

challenge should be overruled, however, since failure to prove venue does not implicate sufficiency of the evidence or require acquittal under a legal sufficiency review. To the extent that Appellant simply raises a claim of venue error, that claim is lacking in merit because proper venue for the trial of all parties to a crime is the county in which it was committed regardless of whether all the parties did any acts within that county. Thus, Appellant's party-predicate acts in Archer County—done with the intent to promote or assist in the commission of the offense by Norman West in Lubbock County—could properly form the basis of criminal prosecution in the county where the offense itself occurred, *i.e.*, Lubbock County. But, even if the Lubbock County venue was not shown by a preponderance of the evidence, the venue error did not affect Appellant's substantial rights since there is no valid basis for Appellant's claim of "forum shopping," Appellant had connections with Lubbock County due to his connections with Norman West and his heroin distribution ring, and venue would have been proper had the State proceeded on the first and/or second count of the indictment, *i.e.*, engaging in organized criminal activity.

The second part of Appellant's sufficiency challenge is that the evidence is legally insufficient to show that he was liable as a party to Norman West's commission of the offense of possession of heroin with the intent to deliver in Lubbock County. His law-of-parties challenge, however, is simply a venue

challenge since he challenges the specific intent to possess with the intent to deliver *in Lubbock County*, which is not an element of the offense for sufficiency purposes. Additionally, as discussed in the preceding paragraph, Appellant's party-predicate acts in Archer County made him liable as a party to the offense of possession of heroin with intent to deliver because he delivered the heroin to Norman West in Archer County knowing that it would be taken by West to Lubbock County to be delivered to West's Lubbock heroin distribution network (*i.e.*, Cynthia Ramirez, Anthony Fields, Bryce Embry, and others), and from there to heroin addicts in Lubbock County. Finally, even if the specific intent to promote or assist in the commission of possession of heroin with intent to deliver in a specific "geographical area" is required, the evidence shows that Appellant aided or attempted to aid West to commit the offense knowing that the heroin would be distributed *via* West's Lubbock heroin distribution network, with some of the proceeds to be used to make future purchases of heroin from Appellant.

<u>Arguments and Authorities</u>

<u>First Issue Presented</u>

Appellant argues that the non-accomplice evidence in the case is insufficient to tend to connect him to the commission of the offense of possession of heroin with the intent to deliver in Lubbock County. His challenge to the venue is not a proper accomplice corroboration challenge since that requirement only applies to a criminative fact—which venue is not. Even if the accomplice corroboration requirement does apply to venue, his claim that the non-accomplice testimony is insufficient to tend to connect him either to the offense of possession of heroin with the intent to deliver or the specific intent to deliver in Lubbock County lacks merit. Appellant was seen by law enforcement meeting with Norman West, who was later arrested with heroin supplied to him by Appellant in his possession. Appellant's bank records and phone records show multiple deposits and meetings between Appellant and West in the time span of a month, and that Appellant communicated with most or all of West's Lubbock heroin distribution ring. West's text messages showed that Appellant received money from West and that Appellant set up a bank account where West could "front" money to him. Does the accomplice corroboration requirement apply to a venue challenge? Does the non-accomplice testimony tend to connect Appellant to the offense of possession of heroin with intent to deliver in Lubbock County?

14

*Standard of Review*

The Code of Criminal Procedure provides that a conviction may not rest upon the testimony of an accomplice unless the testimony is "corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. 38.14. An accomplice is a person who

> participates in the offense before, during, or after its commission with the requisite mental state. Presence at the crime scene does not make a person an accomplice; an accomplice must have engaged in an affirmative act that promotes the commission of the offense that the accused committed. A person is not an accomplice if the person knew about the offense and failed to disclose it or helped the accused conceal it. A State's witness may be an accomplice as a matter of law or as a matter of fact. The evidence in each case will dictate whether an accomplice as a matter of law or fact instruction is required. When the evidence clearly shows (i.e., there is no doubt) that a witness is an accomplice as a matter of law, the trial judge must instruct the jury accordingly.

*Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011) (*internal footnotes omitted*).

The test for weighing the sufficiency of corroborative evidence under the accomplice witness rule is to "eliminate[] all of the accomplice testimony from consideration and then examine[] the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). If the

combined weight of the non-accomplice evidence tends to connect the defendant to the offense, then the requirement of Article 38.14 has been fulfilled. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). If the State fails to sufficiently corroborate accomplice testimony in accordance with Article 38.14, the remedy is an acquittal. *Cathey*, 992 S.W.2d at 463 n. 2.

To meet the requirements of the accomplice witness rule, "the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself. Rather, the evidence must simply link the accused in some way to the commission of the crime and show that 'rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense.'" *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (*internal footnote omitted*). Evidence that the offense was committed is insufficient to corroborate an accomplice's testimony. Nor can an accomplice's testimony be corroborated by prior statements made by the accomplice witness to a third person. *Smith*, 332 S.W.3d at 439.

In conducting a review of whether the non-accomplice evidence tends to connect Appellant to the commission of the offense, the case must be judged

> according to the particular facts and circumstances of each case. The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. So when there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence.

*Smith*, 332 S.W.3d at 442 (*internal footnotes omitted*).  Reviewing courts are to consider the "combined force of all of the non-accomplice evidence that tends to connect the accused to the offense."  *Id.*

*Discussion*

Appellant argues that, separate from the testimony of Norman West and Cynthia Ramirez, there exists insufficient accomplice corroboration evidence that "tends to connect" him as a party to the offense of possession of heroin with intent to deliver in Lubbock County.  He challenges both the "sufficiency" of the non-accomplice corroborating evidence showing that a narcotics transaction ever took place between Appellant and Norman West on December 6, 2010 (Appellant's Br. at 12-13) and whether Appellant had the specific intent that heroin be possessed with the intent to deliver in Lubbock County (Appellant's Br. at 14-15).  The two issues to be decided are: (1) whether the accomplice corroboration requirement applies to a venue challenge; and (2) if so, did the non-accomplice corroborating evidence show that a narcotics transaction took place between Appellant and West and that Appellant had the specific intent that heroin be possessed with the intent to deliver in Lubbock County?

*Does the accomplice corroboration requirement apply to whether the county where the offense was prosecuted is proper, i.e., the venue of where the trial was held?*

The second portion of Appellant's accomplice corroboration challenge is whether there was sufficient non-accomplice testimony that tended to connect him with the intent, under the law of parties, to "specifically distribute in Lubbock County."[10] In other words, he argues that there was insufficient corroborative evidence of Appellant's specific intent that Norman West deliver heroin in Lubbock County, and that he directed, aided, or encouraged him to do so. Since a specific location is not an element of the offense, however, Appellant's challenge is really to the venue of where the trial was held. But, there must only be non-accomplice corroboration "as to a criminative fact or facts." *Holladay v. State*, 709 S.W.2d 194, 200 (Tex. Crim. App. 1986); *see also Little v. State*, No. 12-05-00340-CR, 2006 WL 2106967 at *4, 2006 Tex. App. LEXIS 6739 at *10 (Tex. App.—Tyler July 31, 2006, pet. ref'd) (*not designated for publication*). Venue is not considered an "element of the offense" under Texas law because it is not a "criminative fact." *Schmutz v. State*, 440 S.W.3d 29, 34 (Tex. Crim. App. 2014). Although venue must be proven at trial to establish a defendant's legal status, that does not convert venue into an element of the proscribed offense. *Schmutz*, 440 S.W.3d at 35.

---

[10] (Appellant's Br. at 15).

Because venue is not a "criminative fact," there is no requirement that it be corroborated by non-accomplice testimony that tended to connect Appellant to the geographical location where West intended to deliver the heroin. Thus, all of the evidence presented at trial can be considered in determining whether venue was proven at trial. For the reasons that are discussed further *infra* in this brief (in the second issue of this brief), the State proved venue, in that the State proved by a preponderance of the evidence that the offense occurred in Lubbock County.

*Did the non-accomplice evidence tend to connect Appellant with the commission of the offense in Lubbock County?*

Assuming, *arguendo*, that the accomplice corroboration requirement applies to whether the State was required to show that Appellant specifically intended that West possess heroin with the intent to deliver in Lubbock County, then it must be considered whether: (1) the corroborating evidence shows that a narcotics transaction took place between Appellant and Norman West; and (2) the corroborating evidence shows that Appellant possessed heroin with the specific intent to deliver in Lubbock County. In analyzing this issue, Appellant's status as a principal or as a party is irrelevant under an Article 38.14 analysis. Instead, "[t]he question is whether some evidence 'tends to connect' him to the crime; the connection need not establish the exact nature of his involvement as a principal or

party." *Roys v. State*, 416 S.W.3d 229, 235 (Tex. App.—Amarillo 2013, pet. ref'd) (*citing Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007)).

In conducting the review of whether there was sufficient corroboration, the Court eliminates all of the accomplice testimony from consideration and then examines *the remaining portions of the record* to see if there is any evidence that tends to connect Appellant with the commission of the offense. *See, e.g., Castillo*, 221 S.W.3d at 691; *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App.), *cert. denied*, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). The accomplice witnesses here were Norman West and Cynthia Ramirez, both of whom were accomplices as a matter of law.[11] Accordingly, the evidence presented through the following non-accomplice witnesses should be examined to see if there is any evidence that tends to connect Appellant with the commission of the offense: (1) Agent Mark Ball; (2) Trooper Mark Coonce; (3) Trooper Brent Collins; (4) Lieutenant Steven Schwartz; and (5) Jim Thomas.

Agent Mark Ball was the first State's (non-accomplice) witness. He was contacted about a possible drug deal that was supposed to occur on December 6th somewhere near Seymour. He was asked to conduct surveillance on West's vehicle as it arrived in Seymour. Ball followed West's Suzuki SUV from Seymour

---

[11] The jury was instructed that both Norman West and Cynthia Ramirez were accomplices as a matter of law. (CR pp. 96-100).

to the roadside park alongside Highway 82 in Archer County. To establish surveillance on the roadside park, Ball drove past the roadside park, which was approximately 20 to 25 yards from Highway 82. While watching West, Ball saw a gray Acura pull in and park behind West's Suzuki. West and the unidentified man talked to one another alongside their vehicles for about twelve minutes before both men left the scene. Ball followed the gray Acura into Wichita Falls and advised the Texas Highway Patrol that he would like the Acura pulled over to determine who the driver was.

Trooper Mark Coonce was the second State's (non-accomplice) witness. He was contacted on December 6th about pulling over the gray Acura in hopes of identifying the driver. After establishing probable cause to pull the Acura over, Coonce pulled over the Acura and subsequently identified the driver as being Appellant. After the traffic stop was complete, Coonce issued a warning and let Appellant go.

Trooper Brent Collins was the third State's (non-accomplice) witness. He was contacted on December 6th about performing a traffic stop on West's vehicle. After establishing probable cause to pull West over for a traffic violation, Collins initiated a traffic stop. West, after appearing abnormally nervous during the traffic stop, gave permission to search the vehicle. When a drug dog performed an open air sniff around the vehicle, it alerted on the vehicle. When the vehicle was

searched—after West started acting like he was going to have a heart attack—heroin was found in the center armrest. After Collins talked to West, he was released to EMS's care.

Lieutenant Steven Schwartz was both the fourth and sixth (non-accomplice) witness. He received information that led him to believe that West would be making a trip on December 6th to meet his heroin supplier and obtain black tar heroin to bring back to Lubbock. He assisted in the search of West's vehicle, where the heroin was found in the center armrest. After West was released from the hospital, Schwartz interviewed him at the Lubbock DPS office. West provided Schwartz with information regarding his heroin trafficking operation and gave Schwartz his cell phone. Schwartz took pictures of numerous text messages between West and "Cowboy," *i.e.*, Appellant. Those text messages showed that West and Appellant discussed several meetings between the two over a short time frame in November and December of 2010. Schwartz was able to obtain phone records for one of Appellant's phones and financial records for Appellant's First Convenience Bank account. The phone records showed that Appellant both sent calls to and received calls from West, Ramirez, and other individuals associated with West's heroin operation—all of whom had an 806 prefix and lived in Lubbock. The financial records from the First Convenience Bank account showed that the account was opened by Appellant on October 1st and showed substantial

22

deposits made in October, November, and December. The records also showed that deposits would be made on one day, and then most or all of the money from that deposit would be withdrawn either the same day or within a few days of the deposit being made. The total amount of money that was transferred to Appellant between September 18th and December 6th was $42,100 dollars, which was a significant amount of money during a time that Appellant was unemployed. Schwartz was able to identify all of the individuals involved in Norman West's Lubbock heroin trafficking organization, including Appellant, who was the source of the heroin being brought into Lubbock.

Jim Thomas was the fifth (non-accomplice) witness. He identified the cylindrical object wrapped in aluminum foil taken from West's Suzuki SUV on December 6th as being heroin, with a net weight of 58.69 grams.

Based on the foregoing, there are multiple pieces of non-accomplice evidence that tended to connect Appellant to the transfer of heroin from Appellant to Norman West on December 6, 2010, and to the specific intent that the heroin be possessed with the intent to deliver in Lubbock County.

First, Appellant was seen by law enforcement in the company of Norman West at or near the time of the crime. Evidence that Appellant "was in the company of the accomplice at or near the time or place of a crime is proper corroborating evidence to support a conviction." *Hernandez v. State*, 939 S.W.2d

173, 178 (Tex. Crim. App. 1997). Lieutenant Schwartz received information that West would be meeting with his heroin supplier to get heroin to bring back to Lubbock. Once at the roadside park, Agent Ball saw West meeting with an unknown person outside of their vehicles (who was later identified by Trooper Coonce as being Appellant). This meeting, of course, took place close to the time when West was arrested with a large quantity of heroin in the center armrest of his Suzuki SUV while on his way back to Lubbock.

Appellant notes that Agent Ball did not observe anything being transferred between West and Appellant during the meeting.[12] While that is true (and understandable given that constant surveillance was not possible at that location[13]), the meeting itself, as well as the length of the meeting, can certainly be considered corroborating evidence. Neither West nor Appellant lived anywhere near Archer County. Both parties had to drive for several hours to meet at the roadside park—which itself was suspicious since it was an out-of-the-way location away from any populated area. And, once there, they left after meeting for only about twelve minutes, which was certainly a short period of time given the distance each man drove.[14] Additionally, Appellant engaged in suspicious behavior when he arrived

---

[12] (Appellant's Br. at 12-13).

[13] (RR vol. 4, p. 26).

[14] *See generally Blackman v. State*, 350 S.W.3d 588, 595-96 (Tex. Crim. App. 2011) (stating in a legal sufficiency review of a possession of a controlled substance with intent to deliver case that "[a] jury could reasonably find that appellant and the other two men traveled hundreds of miles

in Wichita Falls by engaging in what Agent Ball called a "heat run," which involved driving down multiple side streets while looking to see if anybody was following him.[15]

Second, there were multiple text messages between the two referencing several meetings over a short time span. Text messages were both sent to and received from Appellant about meeting up on the following days: November 6, 2010; November 16, 2010; November 24, 2010; and December 6, 2010.[16] The existence of four meetings in a time span of one month (from early November to early December) is significant because the distance traveled by the two men— when combined with the other evidence in the case—suggests the existence of a business relationship.[17] A business relationship between the two was significant since Schwartz determined that Appellant was unemployed during that time (but somehow managed to have $42,100 deposited or sent to him between September 18th and December 6th[18]).

---

together for the common purpose of purchasing three kilograms of cocaine.").

[15] (RR vol. 4, pp. 21-22).

[16] The text messages show West taking direction from Appellant about whether a meeting was going to take place and when to leave for each of the meetings. (RR vol. 6, State's Exhibits 16, 18-21 (November 6, 2010 meeting)); 28-30, 32-36, 38-39 (November 16, 2010 meeting); 43-46 (November 24, 2010 meeting); 83-86 (December 6, 2010 meeting).

[17] "It has been held that it may be shown in corroboration that the accomplice witness and the accused were intimate associates." *Mitchell v. State*, 650 S.W.2d 801, 807 (Tex. Crim. App. 1983).

[18] (RR vol. 4, pp. 159, 172).

Third, there were substantial deposits made over a three-month period into Appellant's First Convenience Bank account. The First Convenience Bank records show deposits that were made just prior to the meetings between Appellant and West (on November 6, 2010; November 16, 2010; November 24, 2010; and December 6, 2010).[19] The circumstantial non-accomplice evidence shows that West (or someone working with him) made the deposits. On November 26th, Appellant sent a message containing a bank account number (the First Convenience Bank account number) and a message stating, "Let me know you got this."[20] Likewise, a message with the same bank account number was sent by Appellant on December 3rd to West, and again on December 4th and December 7th.[21] Deposits were subsequently made on or near the same day that the text messages were received: (1) a $1,400 deposit was made the same day the

[19] Prior to the November 6th meeting, a $3,000 deposit was made on November 4th, with a $2,800 withdrawal made the same day. Prior to the November 16th meeting, a $3,400 deposit was made on November 10th, with a $3,000 withdrawal done just two days later. Prior to the November 24th meeting, a $3,400 deposit was made on November 23rd and a $3,200 withdrawal was made the next day. Finally, a $3,400 deposit and a $500 deposit were made on December 6th; a $2,900 withdrawal was made the same day.

[20] (RR vol. 6, State's Exhibit 49). That statement ("Let me know you got this.") when combined with the sending of the bank account number—and the subsequent deposits of large amounts of money into the bank account—suggests that Appellant was directing West's actions. The existence of evidence that Appellant was directing the actions of others involved in the offense is non-accomplice corroboration evidence. *See Gallardo v. State*, 281 S.W.3d 462, 471-72 (Tex. App.—San Antonio 2007, no pet.) ("The evidence that [the appellant] was directing the actions of the other men at the house and told [a non-accomplice] he was leaving Reyes there to show her his protection is some evidence that tends to connect [the appellant] as a party to the subsequent kidnapping of Botello and murder of both men.").

[21] (RR vol. 6, State's Exhibits 67, 82, 90).

November 26th text message was received; and (2) $3,400 and $500 were deposited just a few days after the December 3rd and 4th text messages were received.[22] Additionally, the December 3rd text message shows Appellant directing West to deposit $1,000 into his First Convenience Bank account.[23]

Fourth, Appellant's phone records indicated that he had been in contact with the members of the West heroin operation—including Norman West and Cynthia Ramirez. Schwartz was able to obtain the 972 area code phone number from Cynthia Ramirez's phone and associate it as belonging to Dusty Minton, *i.e.*, Appellant's mother, who lived in the same residence as Appellant.[24] When Schwartz obtained the phone records for that phone number (going back to September of 2010), he saw phone calls both to and from the 972 number placed to individuals associated with West's heroin distribution ring: West himself; Cynthia Ramirez; Anthony Fields; Bryce Embry; and Patrick Helms. All of those people resided in Lubbock and had a phone number with an 806 area code.

Fifth, Appellant met with Ramirez immediately before she was arrested with a large quantity of heroin on her person. Lieutenant Schwartz was involved in the

---

[22] (RR vol. 6, State's Exhibit 13, pp. 62-63). Even if the details about the text messages with the account number do not definitely tie West to the bank deposits, the evidence "provides a 'suspicious circumstance' which tends to corroborate the testimony by suggesting the existence and implementation of a plan." *Beathard v. State*, 767 S.W.2d 423, 430 (Tex. Crim. App. 1989).

[23] (RR vol. 6, State's Exhibits 74-75).

[24] (RR vol. 4, pp. 166-67, 214-15). The other phone number identified as belonging to Appellant was a 214 phone number. (RR vol. 4, p. 166). During Schwartz's testimony, he agreed that it is common that individuals that traffic narcotics will carry more than one phone line. *Id.*

earlier seizure of heroin from Cynthia Ramirez on September 28, 2010—after she was stopped in West's vehicle, a white Suzuki SUV. He was present at the hospital when 70.75 grams of heroin was removed from her person.[25] The seizure took place after text messages were sent back and forth between Ramirez and Appellant letting one another know where they were and indicating that they would soon be meeting up.[26] The text messages were consistent with individuals who were traveling to and meeting in Abilene.[27]

Finally, Appellant fled when police attempted to arrest him in Lewisville for the instant offense. "Evidence of flight and guilty demeanor, coupled with other corroborating circumstances, may tend to connect a defendant with the crime." *Hernandez*, 939 S.W.2d at 178. When Lieutenant Schwartz went to Appellant's residence with an arrest warrant, Appellant went out the back door and fled the scene. It was not until several weeks later that he was arrested.[28] The flight can be considered as showing a consciousness of guilt. *See Wachholtz v. State*, 296 S.W.3d 855, 859 (Tex. App.—Amarillo 2009, pet. ref'd) (*citing Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994)).

---

[25] (RR vol. 4, pp. 210-12).
[26] (RR vol. 4, p. 214; vol. 6, State's Exhibits 95-97).
[27] (RR vol. 4, p. 214).
[28] (RR vol. 4, pp. 171-72).

*Conclusion*

All that the law requires is that there be *some* non-accomplice evidence which *tends* to connect Appellant to the commission of the offense. After affording proper deference to the jury's fact resolutions, there was sufficient non-accomplice evidence that tended to connect Appellant to the offense of which he was convicted, *i.e.*, possession of a controlled substance Penalty Group 1 (heroin) with intent to deliver in an amount of between four and two-hundred grams in Lubbock County.

The non-accomplice evidence shows multiple text messages between Appellant and West. The text messages show that Appellant and West met up with one another at least four times during a one-month period. Prior to each meeting, substantial deposits were made (of $3,000 or more each time) and withdrawal of almost all of the money was done either the same day or within days of the meeting. The withdrawal of the money almost immediately after the deposits were made is indicative that the deposits were made by West—rather than by Appellant personally—and being withdrawn by Appellant after West had made the payments for the heroin by depositing the money into the Lubbock bank account.

Not to be overstated is Appellant's presence at the roadside park on December 6th—which occurred the same day that a $3,400 deposit was made into Appellant's bank account and a $2,900 withdrawal was made from the account.

Appellant was seen at the roadside park by Agent Ball meeting with Appellant. The meeting lasted for only about twelve minutes. The short length of time that Appellant was at the location was suspicious and indicative of a drug transaction given the distance that Appellant had to drive.[29] That activity was even more consistent with drug activity considering that heroin actually was found in West's possession on his return trip to Lubbock. And, of course, when Appellant's role in the distribution ring was discovered and he was about to be arrested, he fled, which indicates consciousness of guilt.

Additionally, Appellant was implicated *in not only one, but two separate heroin transactions with members of the Lubbock distribution ring*.[30] In addition to the transaction involving West, Appellant was also involved in Ramirez's heroin transaction. Text messages were exchanged between the two on September 28, 2010, prior to their meeting near Abilene. After the meeting, Ramirez was returning to Lubbock when she was caught by law enforcement with a substantial quantity of heroin.

---

[29] *See generally Marshall v. State*, No. 07-08-0499-CR, 2009 WL 4573476 at *2, 2009 Tex. App. LEXIS 9305 at *4 (Tex. App.—Amarillo Dec. 7, 2009, no pet.) (*not designated for publication*) (noting in a sufficiency review that the presence of "minute" or very short visits to a house was activity consistent with that undertaken at a crack house); *Herrod v. State,* No. 03-09-00076-CR, 2010 WL 3431667 at *2, 2010 Tex. App. LEXIS 7243 at *6 (Tex. App.—Austin Aug. 31, 2010, no pet.) (*not designated for publication*) (noting in a probable cause review of a search warrant affidavit that a common indicator of drug trafficking is for persons to arrive, meet with a suspect, and then leave a short time later).

[30] The presence of two separate instances where heroin was found in the possession of members of West's heroin distribution ring—after meeting with Appellant—is far more than just a mere "hunch," as alleged by Appellant. (Appellant's Br. at 12).

In fact, Appellant was linked to most or all of the members of the Lubbock heroin distribution network. There were face-to-face meetings with West and Ramirez—at a halfway point for both parties.[31] And, he had phone conversation with most or all of the members of the Lubbock heroin distribution ring, including West and Ramirez. His phone conversations and direct meetings indicates that Appellant knew that the heroin that he supplied on a consistent—nearly weekly— basis was going to be distributed in Lubbock and that he intended that heroin be distributed in Lubbock, due to his obvious financial incentive (in the tune of $42,100 in less than three months).

As noted in *Hernandez*, *supra*, "[w]hile individually these circumstances might not be sufficient to corroborate the accomplice testimony, taken together, rational jurors could conclude that this evidence sufficiently tended to connect appellant to the offense." *Hernandez*, 939 S.W.2d at 178-79. The non-accomplice corroborating evidence was sufficient to show that Appellant aided or attempted to aid West to possess heroin with the intent to deliver and to do so in Lubbock County. That evidence showed the following: (1) Appellant was seen by law enforcement meeting with West at the roadside park on December 6, 2010, in an area that was a halfway point between Lubbock and Lewisville; (2) West was arrested the same day with a substantial amount of heroin in his possession while

---

[31] (RR vol. 4, pp. 128, 206).

returning to Lubbock from his meeting with Appellant; (3) Appellant was linked to West through text messages and financial records as having a business relationship; (4) Appellant provided his bank account information to West; (5) large sums of money were placed in Appellant's bank account—and then almost immediately thereafter withdrawn—just prior to meetings between Appellant and West; (6) the frequent addition and withdrawal of money shows that money was being "fronted" prior to the meetings taking place; (7) Appellant was shown through text messages to have a meeting with Ramirez on September 28, 2010, at an area that was a halfway point between Lubbock and Lewisville; (8) Ramirez was arrested the same day with a substantial quantity of heroin inside of her while returning to Lubbock from her meeting with Appellant; (9) Appellant was linked to most or all of the members of the heroin distribution ring from his phone records; and (10) Appellant fled when law enforcement arrived at his residence to arrest him.

Appellate courts have noted that the tends-to-connect standard "presents a low hurdle for the State." *See, e.g., Hernandez v. State*, 327 S.W.3d 200, 207 (Tex. App.—San Antonio 2010, pet. ref'd); *McAfee v. State*, 204 S.W.3d 868, 872 (Tex. App.—Corpus Christi 2006, pet. ref'd). The non-accomplice evidence here certainly met that standard, in that the evidence tended to connect Appellant as a party to the offense of possession of a controlled substance, *i.e.*, heroin, with the

32

intent to deliver by Norman West and the other members of the West distribution ring in Lubbock County, and showed that he supplied West with the heroin on December 6, 2010. Thus, the accomplice corroboration requirements of Article 38.14 were fulfilled.

Appellant's first issue should be overruled.

## Second Issue Presented

Appellant argues that the evidence is legally insufficient to prove that the offense occurred in Lubbock County and that Appellant was a party to Norman West's commission of the offense of possession of heroin with intent to deliver in Lubbock County. Appellant's sufficiency challenge to the venue lacks merit because his party predicate acts in Archer County could properly form the basis of criminal prosecution in the county where the offense itself occurred, *i.e.*, Lubbock County. Likewise, Appellant's sufficiency challenge to the evidence supporting his liability as a party lacks merit because the evidence shows that Appellant acted with intent to promote or assist in West's commission of the offense of possession of heroin with the intent to deliver in Lubbock County by aiding or attempting to aid him to commit the offense knowing that the heroin would be delivered to West's Lubbock heroin distribution network and to heroin addicts. Did the State prove by a preponderance of the evidence that the offense was committed in

Lubbock County by proving the party-predicate evidence from Archer County? If not, were Appellant's substantial rights affected by the venue error? Did the State prove beyond a reasonable doubt that Appellant was a party to Norman West's possession of heroin with intent to deliver in Lubbock County?

*Discussion*

Appellant argues that the evidence is insufficient to support the jury's findings that: (a) the offense occurred in Lubbock County for venue purposes (Appellant's Br. at 16-17); and (b) Appellant acted with intent to promote or assist in the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid Norman West to possess heroin with the intent to deliver in Lubbock County (Appellant's Br. at 17-25). Each argument will be addressed in turn.

*Do the facts of the case show that the offense was committed in Lubbock County for venue purposes?*

Appellant's first argument is that the evidence is "legally insufficient" to show that the offense occurred in Lubbock County for venue purposes. He argues that "[t]he State provided no evidence in support of its allegation of venue, and even conceded the evidence would not show Minton was in Lubbock, Texas at the time of the offense."[32]   He also argues that venue was not shown by a

---

[32] (Appellant's Br. at 16).

preponderance of the evidence because there is "no evidence in the record supporting that Minton was in Lubbock or committed any act in Lubbock pertinent to West's ultimate intent to re-sell heroin."[33]

Before discussing the merits of Appellant's challenge to the evidence supporting the venue allegation, it should first be noted that Appellant alleges a *legal sufficiency challenge* to the venue allegation.[34] But, as noted by the Court of Criminal Appeals in a recent decision, venue error does not render the evidence legally insufficient. In particular, the court noted that the argument that *Jackson v. Virginia*[35] "requires acquittal for venue error is unavailing because venue is procedurally and substantively different from elements of the offense." *Schmutz*, 440 S.W.3d at 34. Venue is not considered an element of the offense under Texas law because it is not a "criminative fact." *Id.* Although venue "must be proven 'at trial to establish a defendant's [legal] status,' that 'does not convert' venue into an 'element[] of the proscribed offense[].'" *Id.* at 35. Because venue is not an element of the offense, failure to prove venue does not implicate sufficiency of the evidence, nor does it require acquittal under a *Jackson* legal sufficiency review. *Id.*

---

[33] (Appellant's Br. at 17).
[34] (Appellant's Br. at 8-9, 16).
[35] *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

To sustain the venue allegation, "it shall only be necessary to prove by *the preponderance of the evidence* that by reason of the facts in the case, the county where such prosecution is carried on has venue." TEX. CODE CRIM. PROC. ANN. art. 13.17 (*emphasis added*); *see also Murphy v. State*, 112 S.W.3d 592, 603-05 (Tex. Crim. App. 2003) (discussing the type of proof necessary to prove the venue provisions the jury was instructed upon).[36] Venue may be proved by direct or circumstantial evidence. *See Braddy v. State*, 908 S.W.2d 465, 467 (Tex. App.—Dallas 1995, no pet.) (*citing Black v. State*, 645 S.W.2d 789, 790 (Tex. Crim. App. 1983), *overruled in part on other grounds by Schmutz v. State*, 440 S.W.3d 29 (Tex. Crim. App. 2014)). Evidence is sufficient to establish venue if from the evidence the jury may reasonably conclude that the offense was committed in the county alleged. *See Rippee v. State*, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964); *Ludy v. State*, No. 07-04-0240-CR, 2005 WL 21447 at *2, 2005 Tex. App. LEXIS 63 at *6 (Tex. App.—Amarillo Jan. 4, 2005, no pet.) (*not designated for publication*). Venue will stand if it is sufficient "under any one of the venue provisions the jury was instructed upon." *Murphy*, 112 S.W.3d at 605.

Count Three of the indictment alleged that Appellant, "*in Lubbock County, Texas* . . . heretofore on or about the 6th day of December, A.D. 2010 did then and

---

[36] Venue is presumed proven in the trial court unless venue is "disputed in the trial court" or "the record affirmatively shows the contrary." *See* TEX. R. APP. P. 44.2(c)(1) (permitting an appellate presumption that venue was proven in the trial court).

there knowingly possess, with intent to deliver, a controlled substance, namely, heroin, in an amount of four grams or more but less than 200 grams."[37] The jury charge stated:

> [I]f you find from the evidence beyond a reasonable doubt that on or about December 6, 2010, *in Lubbock County*, [Appellant], acting alone, or acting with intent to promote or assist the commission of the offense by Norman West and/or Cynthia Ramirez by encouraging, directing, aiding or attempting to aid Norman West and/or Cynthia Ramirez to commit the offense, if any, by his own actions and conduct during the commission of said offense, did then and there knowingly possess, with intent to deliver, a controlled substance, namely heroin, in an amount of four grams or more but less than 200 grams, then you will find the defendant guilty as charged in the indictment.[38]

Thus, based on the allegations in the indictment and the language of the jury charge, the issue is whether the State proved that the offense was committed in Lubbock County.

The State's burden was to prove by a preponderance of the evidence that "the offense was committed"[39] in Lubbock County. Lubbock County was the proper venue for the trial of the offense because Appellant was a party to Norman West's possession of heroin with intent to deliver in Lubbock County.

---

[37] (CR p. 7) (*emphasis added*).
[38] (CR p. 100) (*emphasis added*).
[39] If venue is not specifically stated, the proper county for the prosecution of offenses is "that in which the offense was committed." TEX. CODE CRIM. PROC. ANN. art. 13.18.

The jury was charged on the law of parties.[40]  The law allows "[e]ach party to an offense [to] be charged with commission of the offense."  TEX. PEN. CODE ANN. § 7.01(b).  A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.  TEX. PEN. CODE ANN. § 7.01(a).  A person is criminally responsible for an offense committed by the conduct of another if (among other ways not relevant here) "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."  TEX. PEN. CODE ANN. § 7.02(a)(2).

Appellant's argument is that for venue to lie in Lubbock County, his party-predicate acts had to occur in Lubbock County.  But, there is no authority for the proposition that one must be prosecuted as a party in the county in which his party-predicate acts occurred, as opposed to the county in which the offense itself occurred.  In fact, as noted by the First Court of Appeals, "the law has expressly been to the contrary for 112 years."  *Duvall v. State*, 189 S.W.3d 828, 831 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

In *Duvall*, the appellant argued that the trial court erred in denying his motion for instructed verdict because the evidence was legally insufficient to show venue in Chambers County under the law of parties because his actions as a party

---

[40] (CR pp. 96, 100).

38

to the offense of possession of marijuana occurred in Harris County rather than Chambers County. In particular, law enforcement saw the appellant come in and out of a hotel room (in Harris County) with a duffel bag. When he left the room, the duffel bag appeared to be empty. When he returned, the duffel bag appeared to contain a heavy object. A flurry of activity then took place inside the room that was indicative of narcotics activity. The appellant and several other individuals then left the hotel, with the appellant inside a Suburban and another individual from the hotel room driving away in a Honda Accord with the marijuana in the trunk. When both vehicles were stopped in Chambers County, the marijuana was discovered inside the trunk. *Duvall*, 189 S.W.3d at 829-30. On appeal, he argued that he could not be charged with any offense in Chambers County because "a party to the offense may be prosecuted only in the county in which his 'party-predicate' acts—that is, those acts that solicited, encouraged, directed, aided, or attempted to aid another to commit the offense—occurred, rather than in the county in which the offense actually occurred." *Id.* at 831. The *Duvall* court determined that the appellant was properly convicted under the law of parties to the offense of possession of marijuana in Chambers County because

> a jury could rationally have concluded that appellant's possession as a party occurred in Chambers County. Appellant admits that he has found no authority holding that one must be prosecuted as a party in the county in which the party-predicate acts occurred, as opposed to in the county in which the offense itself occurred, and we have found no

such authority. Indeed, the law has expressly been to the contrary for 112 years.

*Id.*; s*ee also Baker v. State*, 124 Tex. Crim. 300, 306, 62 S.W.2d 132, 135 (1933) (*op. on reh'g*) ("Venue of the case was properly laid in Gaines county where the robbery was committed, even though the main consultation between appellant and Edwards was in Terry county. These cases lay down the rule that the accomplice may be prosecuted in the county where the crime advised, aided, etc., is actually committed.") (*internal citations omitted*)); *Carlisle v. State*, 31 Tex. Crim. 537, 545-47, 21 S.W. 358, 358-59 (1893); *Burkhalter v. State*, 655 S.W.2d 215, 221 (Tex. App.—Corpus Christi 1982) (stating that under Article 13.18 of the Code of Criminal Procedure, "[p]roper venue for the trial of all parties to a crime is the county in which it was committed regardless of whether all the parties did any acts within that county."), *pet. dism'd as improvidently granted*, 655 S.W.2d 208 (Tex. Crim. App. 1983).

Based on the foregoing, Lubbock County was the proper venue for the prosecution of the offense. Appellant transferred the heroin at issue to Norman West in Archer County knowing that West would take the heroin to Lubbock County. Appellant was a party to the offense with West, in that Appellant aided or attempted to aid West in the commission of the offense of possession of heroin with intent to deliver in Lubbock County. While Appellant did not step foot in

Lubbock County on December 6, 2010, he knew that West would be taking the heroin he supplied to West to Lubbock County. Furthermore, he intended that West take the heroin to Lubbock County so that it could be distributed—with the obvious financial incentive being that once the heroin had been distributed, West (or Ramirez) would be "fronting" more money into his First Convenience Bank account for the purchase of additional heroin.

The State proved by a preponderance of the evidence that venue was proper in Lubbock County, in that the jury could have reasonably concluded from the evidence that the offense occurred in Lubbock County. Thus, the first portion of Appellant's "sufficiency" argument should be overruled.

*Were Appellant's substantial rights affected from the venue "error"?*

If the Court finds that venue was not proven at trial, the venue error is subject to a review for harm by using the standard for non-constitutional error. *See* TEX. R. APP. P. 44.2(b); *Schmutz* at 31. Though Appellant suggests that the State's "failure" to prove venue as alleged requires automatic reversal,[41] the *Schmutz* court directly held to the contrary, *i.e.,* that the "failure" to prove venue does not require automatic reversal since it does not qualify as structural or constitutional error. *Id.* at 35-39.

---

[41] (Appellant's Br. at 17).

Under Rule 44.2(b), a non-constitutional error "that does not affect substantial rights must be disregarded." TEX. R. APP. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Schmutz* at 39. In assessing the likelihood that the jury's decision was adversely affected by the error,

> an appellate court considers everything in the record. This includes testimony, physical evidence, jury instructions, the State's theories and any defensive theories, closing arguments, and voir dire, if applicable. Important factors include the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, and may include whether the State emphasized the error and whether overwhelming evidence of guilt was present.

*Id.* (*internal citations omitted*). The record as a whole should be examined to assess whether Appellant was actually harmed by the "error." *Id.* at 40.

Though Appellant did not conduct a harm analysis in his brief, he suggests that the trial only occurred in Lubbock County because of "forum shopping."[42] Obviously, one of the reasons for having venue statutes is to "prevent forum-shopping by the State." *See Dewalt v. State*, 307 S.W.3d 437, 460 (Tex. App.— Austin 2010, pet. ref'd). But, there is no evidence that the Lubbock County location was the result of forum shopping. The record does not support any claim of "forum shopping," as shown by the cross-examination of Lieutenant Schwartz:

---

[42] (Appellant's Br. at 7, 17).

Q. Fair enough. And during that conversation with me, you indicated, did you not, that this was going to be a federal case?

A. Yes, sir, at that time, we believed that it would be.

Q. That meant that DEA was going to be involved probably; is that right?

A. No, sir, they were not involved.

Q. Well, they were involved, didn't you -- didn't you elicit their help in like doing some phone records and different things for you?

A. We used Homeland Security.

Q. Okay. Department of Homeland Security?

A. Yes, sir.

Q. All right. And for whatever reason, the federal agencies decided not to pick up this case; is that correct?

A. No, that's not correct.

Q. Did they ever file an Indictment against Mr. Minton?

A. No, sir. I withdrew the case from -- from their consideration. I brought it to the State's attorney.

Q. All right. Was that before you told me that it was going to be federal or after?

A. I withdrew it much after that, our conversation.

Q. Okay. And then you -- I believed you stated that on direct examination from the prosecutor here, you said, "Everyone else in your investigation lived in Lubbock, Texas;" is that right?

A. No, sir.  Of the people that we discussed, those people lived in Lubbock, not everyone in the investigation.

Q. Fair enough.  Of all the people that she discussed with you, they all lived in Lubbock County, Texas?

A. At -- at the time of the investigation, yes, they did.

Q. Except for one, and that's Mr. Minton, he didn't live in Lubbock County, Texas, correct?

A. That is correct.

(RR vol. 4, pp. 173-75).

It is clear from the record that Lieutenant Schwartz originally thought that the case was going to be a federal case, but due to reasons not adduced at trial, decided to bring the case to the Lubbock County Criminal District Attorney's Office.  There are any number of reasons why Lieutenant Schwartz brought the case to the Lubbock DA's Office that have nothing to do with forum shopping.  There is testimony by Lieutenant Schwartz that he initially intended to flip Appellant and procure his supplier[43]—which likely would have been a federal case had he been able to do so.  Also, Schwartz may have been unsure of which county venue would lie due to Appellant's living in Lewisville, his meeting West in Archer County to exchange the heroin, and most of West's distribution ring living in Lubbock County.

---

[43] (RR vol. 4, p. 127).

In addition to the lack of evidence of "forum shopping," there is other record evidence showing that Appellant's substantial rights were not affected. One of the factors in the *Schmutz* harm analysis was that Randy Schmutz was inconvenienced by the venue's location being more than 200 miles from his house. The *Schmutz* court rejected that argument because the venue of the trial was "one to which the parties regularly traveled to conduct their mutual business," in that the appellant had traveled to Titus County to sign the operating agreement with the victim corporation and meet with its corporate officers, and had traveled there "a lot of times" to pick up inventory from the corporation. *Id.* at 40. Appellant notes in his brief that the rest stop where the heroin was passed to West was approximately 175 miles from Lubbock County[44] (with the distance between Lewisville to Lubbock being even further). While the record evidence does not show the same level of contact between Appellant and Lubbock that Randy Schmutz had with Titus County, the record evidence does show a business relationship that revolved around Lubbock County. Appellant met with West, Ramirez, Embry, and Fields in Lubbock, where the business relationship was established. After that initial meeting, Appellant set up a Lubbock bank account—a bank account from which thousands of dollars was deposited for Appellant's benefit. He also made frequent trips to meet with West and Ramirez and deliver heroin to them—heroin that

---

[44] (Appellant's Br. at 3, 22).

Appellant knew was destined to be distributed to heroin addicts in Lubbock County. Thus, despite the distance between Lubbock and Lewisville, Appellant had substantial connections with Lubbock.

Additionally, the *Schmutz* court also stated another factor that applies here, *i.e.*, whether venue was proper in Lubbock County under any valid basis. The *Schmutz* court noted that venue would have been proper in Titus County—had it been properly alleged as such—under Article 13.09 as the county from which the victim corporation's secured property was removed. *Schmutz* at 40-41. Even *if* venue was not proper in Lubbock County based on the offense that was tried in Lubbock County, *i.e.*, possession of heroin with the intent to deliver, venue would have been proper in Lubbock County had Appellant been tried for the first and/or second counts of the indictment, *i.e.*, engaging in organized criminal activity. The venue statutes allow the offense of engaging in organized criminal activity to be prosecuted "in any county in which any act is committed to effect an objective of the combination . . ." TEX. CODE CRIM. PROC. ANN. art. 13.21. The evidence shows that Appellant, along with at least two other people (West and Ramirez), conspired to commit or did commit the offense of delivery of a controlled substance in Lubbock County, and did so with the intent to establish, maintain, or participate in a combination or in the profits of a combination. *See* TEX. PEN. CODE ANN. § 71.02(a)(5) (engaging in organized criminal activity statute). Thus,

even if the Lubbock County venue was not appropriate for Count III of the indictment, venue was appropriate in Lubbock County for Counts I and/or II of the indictment—which dealt with the same facts and circumstances as the evidence admitted at trial.

The *Dewalt* court noted the purpose of venue statutes is as follows: "to ensure that jurors have a natural interest in the case because it touched their community; to ensure that prosecutions are initiated in counties that have some factual connection to the case, thus minimizing inconvenience to parties and witnesses; to aid predictability in judicial caseloads, and to prevent forum-shopping by the State. *Dewalt*, 307 S.W.3d at 460. The jurors had a natural interest in the case since heroin was being delivered into their community, and Appellant was a major supplier of the heroin that was being delivered into their community. The prosecution was initiated in a county that had an obvious factual connection to this case—since money was deposited in Lubbock County for heroin by people who intended to bring heroin into Lubbock County.

For all of the foregoing reasons, assuming that the Lubbock County venue was not proven by a preponderance of the evidence, Appellant's substantial rights were not affected from the venue "error" in having the trial in Lubbock County.

*Did the State prove that Appellant aided or attempted to aid West in possessing heroin with intent to deliver in Lubbock County?*

The law of parties allows for a conviction if "the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PEN. CODE ANN. § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PEN. CODE ANN. § 7.02(a)(2).

When the evidence shows that the defendant was not the "primary actor," but at most responsible for the actions of the "primary actor," the State "must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct." *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985). In determining whether an individual is a party to an offense, the reviewing court

> may look to 'events before, during, and after the commission of the offense.' A court may also rely on circumstantial evidence to prove party status. There must be sufficient evidence of an understanding and common design to commit the offense. Each fact need not point directly to the guilt of the defendant, as long as the cumulative effect of the facts are sufficient to support the conviction under the law of parties. However, mere presence of a person at the scene of a crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense.

*Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). The evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose. *See Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986), *overruled in part on other grounds by Barnes v. State*, 876 S.W.2d 316 (Tex. Crim. App. 1994); *McKinney v. State*, 177 S.W.3d 186, 197 (Tex. App.—Houston [1st Dist.] 2005), *aff'd*, 207 S.W.3d 366 (Tex. Crim. App. 2006). There must be sufficient evidence of an understanding or common scheme to commit a crime. *Gross*, 380 S.W.3d at 188 (*citing Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

Appellant argues that the evidence is legally insufficient to show that he acted as a party to West's specific intent to possess and deliver heroin *in Lubbock County, Texas*.[45] His law-of-parties sufficiency challenge, however, is simply a sufficiency challenge to the venue since he specifically focuses on whether the evidence shows that he was a party to the offense with Norman West *in Lubbock County*. But, as already noted in the preceding section, venue is not considered an element of the offense because it is not a "criminative fact." *Schmutz* at 34. Because venue is not an element of the offense, failure to prove venue does not implicate sufficiency of the evidence. *Id.* at 35.[46]

---

[45] (Appellant's Br. at 21-22, 26).

[46] Appellant argues that "[a] general agreement between West and Minton in terms of supplying heroin *does not equate to specific intent to distribute in a specific geographical area*, and the

Additionally, Appellant's party-predicate acts in Archer County made him liable as a party to the offense of possession of heroin with intent to deliver in an amount of four grams or more but less than 200 grams. Appellant delivered the heroin to Norman West in Archer County knowing that it would be taken by West to Lubbock County to be delivered *via* West's Lubbock heroin distribution network. The evidence circumstantially shows that Appellant knew that West would deliver heroin to heroin addicts in Lubbock County and acted with intent to promote or assist in the commission of the offense (*via* the testimony about their initial meeting, the frequent bank deposits, and the text messages about meeting up), but at the very least shows that Appellant knew that the heroin delivered to West on December 6th would be delivered to West's heroin distribution network in Lubbock County—which is all that is required to constitute "delivery" of a controlled substance for purposes of Section 481.112 of the Health and Safety Code.[47] Thus, based on Appellant's actions in Archer County, the evidence was

---

specific intent of the respective parties is what determines liability as a party." (Appellant's Br. at 21) (*emphasis added*). But, "specific intent to distribute in a specific geographical area" is not an element of the offense. The offense of possession of a Penalty Group 1 offense with intent to deliver has the following elements (as modified by the indictment here): (1) Appellant (2) knowingly (3) possesses with intent to deliver (4) a controlled substance listed in Penalty Group 1 (heroin) (5) in an amount of between four and two hundred grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d). A "specific geographical area" is not an element of the offense.

[47] Appellant argues that "there has to be proof of Minton's adoption and assistance of West's ultimate goal of *resale* of the heroin." (Appellant's Br. at 22) (*emphasis added*). That, however, is not a correct statement of the law. The State simply had to show that Appellant acted with intent to promote or assist the commission of the offense of possession of heroin with the intent

sufficient to show that Appellant was a party to Norman's West's commission of the offense of possession of a controlled substance *with intent to deliver*.[48]

Assuming, *arguendo*, that a sufficiency challenge to party liability based on a "specific intent to distribute in a specific geographical area"[49] is a valid sufficiency challenge, the State's evidence shows that Appellant, acting with intent to promote or assist the commission of the offense, aided or attempted to aid Norman West in the offense of possession of heroin with intent to deliver in Lubbock County. Norman West distributed heroin in Lubbock County. West was arrested on December 6th in Lubbock County for possession of heroin with the intent to deliver—heroin given to him by Appellant with the intent to deliver the heroin. West's arrest followed Cynthia's Ramirez's earlier arrest on September 28th for possession of heroin with the intent to deliver—heroin that was also give to her by Appellant with the intent to deliver the heroin.

Appellant's intent to promote or assist the commission of the offense of possession of heroin with the intent to deliver in Lubbock County is shown from

to *deliver*. "Deliver" means "to transfer, actually or constructively, *to another* a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (*emphasis added*). Thus, all there has to be is the intent to actually or constructively transfer *to another* in order for the offense to be complete; an actual sale of the controlled substance is unnecessary.

[48] *See Duvall* at 831-32 (finding that the State proved the appellant's status as a party to the offense of possession of marijuana when his party predicate actions occurred in a different county from the county in which the offense occurred because the appellant's actions in carrying the bag containing the marijuana into the Honda Accord's trunk showed that he was "contributing some part toward the execution of their common purpose.").

[49] (Appellant's Br. at 21).

the evidence that Appellant was an active participant with Norman West in the delivery of heroin into Lubbock County. *See McKinney*, 177 S.W.3d at 197 (stating that an accused's mental state may be inferred and proven circumstantially from acts, words, and surrounding circumstances). West was introduced to Appellant by Anthony Fields and Bryce Embry.[50] Their first meeting took place at West's house in Lubbock in September of 2010[51]—which is obviously in Lubbock County. During that meeting—which also had Ramirez, Bryce Embry, and Anthony Fields present—West discussed buying heroin from Appellant. Appellant agreed to be a source of heroin for West.[52]

Following their meeting, Appellant set up an account at First Convenience Bank in Lubbock to be used by Norman West to "front" money to Appellant. Appellant provided the account number to West for that purpose.[53] Appellant and Ramirez then "fronted" money into the First Convenience Bank account in Lubbock (as well as other accounts). Appellant used those same funds deposited into his account to further West's possession, as indicated by Appellant's requirement that West "front" the money to him before they met up. During trial, Lieutenant Schwartz noted that:

---

[50] (RR vol. 4, pp. 113-14).
[51] (RR vol. 4, pp. 114, 117-19, 201-02). Ramirez's statement was specifically elicited at trial for the purpose of showing Appellant's intent. The trial court agreed to admit the evidence for that purpose. (RR vol. 4, pp. 183-84).
[52] (RR vol. 4, pp. 114-15, 201-02).
[53] (RR vol. 4, pp. 115-16).

> Most narcotics dealers do not want to provide narcotics until they have the money in hand. Some suppliers don't have ready access, they don't have the drugs actually in their possession at the time that they make the deal. So what -- what happens is someone like Mr. West would provide the money to his supplier, his supplier would have to go obtain the drugs, and then the -- his supplier would provide it and bring those drugs back to Mr. West. So you have to pay in advance, basically.

(RR vol. 4, p. 138).

Once West/Ramirez and Appellant met up, they did so at halfway points between Lubbock and Lewisville. The text messages taken from West's cell phone show that Appellant and West met up at least four times for the express purpose of Appellant transferring heroin to West. On the December 6th trip, West met with Appellant in Archer County at a roadside park, where heroin was delivered by Appellant to West—after West "fronted" $3,400 into the First Convenience Bank account in Lubbock. On the earlier September 28th trip, Ramirez met with Appellant outside of Abilene, where heroin was delivered to her as well.

Based on the foregoing, it is clear that but for the money deposited in Lubbock County, Appellant using those funds to obtain the narcotics, and Appellant meeting West and Ramirez halfway between Lubbock and Lewisville, the heroin would not have made it into Lubbock County. Appellant was a party to the offense of possession of heroin with the intent to deliver in Lubbock County because Appellant, while acting with intent to promote or assist West's

commission of the offense, aided or attempted to aid Appellant to commit the offense.[54]  Not only did Appellant supply the heroin to Norman West, but he was well aware of what the heroin was intended for.  How else does one explain the initial meeting between Appellant and West, Ramirez, Fields, and Embry, where the agreement to supply heroin was made?  Additionally, how does Appellant explain multiple deposits of thousands of dollars into the First Convenience Bank account over a period of just a few months?

The circumstantial evidence shows that Appellant intended to promote or assist in the commission of the offense by delivering the heroin to West and Ramirez on a consistent basis—with the obvious motive to do so being financial in nature.  This was not a one-time transaction between a street-level dealer and a person pulling up from the side of the road, where the street dealer likely has no idea who the client is, where the client is coming from, or where the client is going next.  Appellant's relationship with West was an ongoing *business* relationship, whereby Appellant profited from West's importation of heroin into Lubbock to the

---

[54] Appellant points to West's and Ramirez's testimony that no one controlled where they went or what they did after the heroin was delivered to them by Appellant as proof that the evidence is insufficient to show his status as a party to the offense. (Appellant's Br. at 4, 6-7, 25-26).  But, all that shows is that Appellant did not *direct* West's actions.  The law of parties states that a person is criminally responsible for an offense committed by the conduct of another if the defendant, acting with intent to promote or assist the commission of the offense, *solicits*, *encourages*, *directs*, *aids*, or *attempts to aid* the other person to commit the offense.  TEX. PEN. CODE ANN. § 7.02(a)(2).  Thus, Appellant can still be found liable under the law of parties for aiding or attempting to aid West in the commission of the offense, even if he did not direct West's actions.

tune of *over forty-two thousand dollars*. Appellant knew exactly where West and Ramirez lived, where West's heroin distribution network was, and what his role in West's distribution network was. Thus, the law of parties applies here because the evidence shows that Appellant intended to promote or assist the commission of the offense of possession of heroin with intent to deliver by Norman West in Lubbock County.

Appellant, however, argues that he cannot be convicted as a party because "he was never closer than 175 miles to scene of the crime. Other cases reviewing party liability as a basis for conviction seem to presuppose that the person accused of being a party to an offense was at, or very near the crime, when it happened."[55] He also argues that "precedent seems to demand that the State put Minton at the scene of the crime (Lubbock County) when West was caught possessing drugs with intent to deliver them, or he cannot be a party to the offense."[56] While it is true that Archer County is around 175 miles from Lubbock County, that does not change the fact that Appellant acted with intent to promote or assist in the commission of West's possession of heroin with intent to deliver in Lubbock County by providing him the heroin, setting up a Lubbock bank account, and communicating with West *via* text messages regarding meeting up to deliver the

---

[55] (Appellant's Br. at 22).
[56] (Appellant's Br. at 22-23).

heroin to West. Additionally, while Appellant was not with West when West was arrested, that does not affect party liability. While the fact patterns of many cases do involve a party being at or near the scene of the crime when it occurs, that does not mean that a person *must* be physically present in order for the person to be guilty of an offense under the law of parties. As noted by the Court of Criminal Appeals, "[t]he Penal Code also does not require that a party to the crime be physically present at the commission of the offense."[57] *Guevara*, 152 S.W.3d at 52.

The evidence is legally sufficient to show that Appellant acted with intent to promote or assist the commission of the offense of possession of heroin with the intent to deliver in Lubbock County by Norman West by aiding or attempting to aid West in committing the offense. Thus, the second portion of Appellant's "sufficiency" argument should be overruled.

---

[57] Appellant cites *Lewis v. State* in support of his argument that he could not be a party to the offense because of the distance between Archer County and Lubbock County. (Appellant's Br. at 23-25, 27) (*citing Lewis v. State*, No. 05-94-01051-CR, 1996 WL 640590, 1996 Tex. App. LEXIS 4894 (Tex. App.—Dallas Oct. 31, 1996, no pet.) (*not designated for publication*)). But, the *Lewis* court wrongly equated venue as being an element of the offense, despite the fact that venue is not a "criminative fact" (and the location where the offense of illegal investment occurred is not an element of the offense). *See Lewis*, 1996 WL 640590 at *2-3, 1996 Tex. App. LEXIS 4894 at *7-10. Additionally, the *Lewis* case is factually distinguishable from the facts of this case, in that the offense of illegal investment in the *Lewis* case was complete before the parties ever entered Collin County (*see Lewis* at *3, 1996 Tex. App. LEXIS 4894 at *9), whereas possession of heroin with the intent to deliver was ongoing when West drove into Lubbock County. Thus, based on both the legal reasoning and the factual differences between the *Lewis* case and this case, the *Lewis* case—which is not binding precedent upon this Court—should not be relied upon by the Court.

*Conclusion*

Appellant's first argument regarding venue lacks merit because, though his party-predicate acts occurred in Archer County, Texas, he was a party to Norman West's possession of heroin with the intent to deliver in Lubbock County. Likewise, Appellant's second argument regarding the sufficiency of the evidence showing his guilt as a party to the offense of possession of heroin with the intent to deliver lacks merit because the evidence shows that Appellant aided or attempted to aid Norman West to commit the offense of possession of heroin with intent to deliver in Lubbock County with the intent to promote or assist in the commission of the offense.

Appellant's second issue should be overruled.

## Conclusion and Prayer

For the reasons stated above, no reversible error has been committed and the State respectfully requests that the Court should affirm the judgment and sentence in all things.

Respectfully submitted,

*MATTHEW D. POWELL*
Criminal District Attorney
State Bar No. 00784782

By: /s/ Jeffrey S. Ford
Jeffrey S. Ford
Assistant Criminal District Attorney
Lubbock County, Texas
State Bar No. 24047280
P.O. Box 10536
Lubbock, Texas 79408
(806)775-1166
FAX (806)775-7930
E-mail: JFord@co.lubbock.tx.us

## Certificate of Service

I certify that a true copy of the foregoing brief has been delivered to Joel Cook, Attorney for Appellant, by e-mail delivery to joel_cook@outlook.com on January 25, 2015.

*MATTHEW D. POWELL*
Criminal District Attorney
State Bar No. 00784782

By: /s/ Jeffrey S. Ford
Jeffrey S. Ford

58

## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), I further certify that, relying on the word count of the computer program used to prepare the foregoing State's Response, this document contains 12,742 words, inclusive of all portions required by TEX. R. APP. P. 9.4(i)(1) to be included in calculation of length of the document.

**MATTHEW D. POWELL**
Criminal District Attorney
State Bar No. 00784782


By: /s/ Jeffrey S. Ford
Jeffrey S. Ford